and Mr. Taylor. Good morning and may it please the court. My name is LeVar Taylor. I'm here on behalf of the appellant, Mr. Ames. This case involves the question of when the tax court has the authority to determine the merits of an underlying tax liability in a collection due process case. There are two subsections of 6338 issue, C2B and C4. I'm going to start with C4. That's the section that was not discussed by the tax court below in this case. C4 was not even raised by the government in its original motion. It was raised in a subsequent pleading. Because this deals with the authority of the court, we have no objection of the court addressing C4. In fact, we think the court is required to do so because this deals with subject matter jurisdiction over the merits of the liability. I start with C4 because the tax court in a case handed down last year while this case was appending issued an opinion saying C4 does not apply in this case. And the reasoning of the tax court is very interesting because what the tax court said, that's the Hampton software case at page 16 of our reply brief. The tax court said that applying C4 would undercut the very regulation that the government wants to uphold in this appeal. So this case is very interesting. I've never encountered one like this in 35 years of representing people, representing the IRS or representing clients outside of the IRS where the government is saying, well, we think you ought to uphold this regulation, but they're arguing that the regulation, on the other hand, they're arguing the regulation is no good. That's what's happening in this case. Notwithstanding that conflict, there are other reasons why C4 does not apply. First, there's an exception to C4 in D3B. That exception says you can raise an issue that was raised in a prior administrative or judicial proceeding, okay, which was considered. That's the test under C4. You can raise it, notwithstanding the prohibition, if there is a change in circumstances with respect to such person. That's the taxpayer. Now liabilities, if they're disputed and unpaid, can go down, but they can't go sideways. And this exception, D3B, deals with what happens when a taxpayer goes sideways. If a taxpayer, there's a ruling, they file an appeal, and the ruling is you pay $1,000 a month in an appeal, and the taxpayer later loses their job, that's what D3B is there for. So the fact that the exception applies to taxpayers who go sideways and not to liabilities indicates that C4 does not apply to liabilities. Second, applying C4 to liabilities would encourage taxpayers to delay the resolution of a case. When the IRS, take the following fact pattern. Suppose the IRS comes to my client and says, we think you owe a penalty of $1,000,000. My client says I can't pay $1,000,000 and assume it's not subject to the deficiency proceeding. So the only place, if I can't raise it in a collection due process appeal and litigate it in court there, the only place I can litigate it is in a refund suit. And if my client says I can't pay $1,000,000, I have to plan things so that I can go raise the merits in a collection due process appeal. So how do I do that? I don't pursue the appeal at the earliest opportunity. Instead of pursuing the appeal early and raising all the issues, I have to wait until the IRS assesses the penalty, files a lien against my client, ruining my client's credit, or sends a notice to my client saying we can levy on all your assets. Is it clear, Mr. Taylor, that that's a viable strategy or is the fact that the taxpayer has an opportunity to litigate or dispute the tax before getting to the CDP proceedings, is that enough? Well, the opportunity is C2B. Okay. And I'll address that momentarily. But C4 deals with what happens when you participate in an administrative proceeding and you actually raise the issues. So I will get to the opportunity and what that means. But C4 is a different animal. And so what happens with C4 is if I go raise it, I lose the opportunity to challenge it in a collection due process case. That's crazy. We want to have a system that encourages taxpayers to come in early and resolve disputes early. We don't want to have a system that says, oh, taxpayer, if you raise it early, you're going to lose the ability to raise it later on in a collection due process case. It was raised and considered at a previous hearing, wasn't it? In this case? Yeah. It was raised. Well, the underlying liability, the record is not... Under 6320. There's no 63... This is a 6330 case. There was no 6320 hearing in this case. What happened here was the government said, we think you're liable for a 6707A penalty. But it says, or in any other previous administrative or judicial proceeding. And the question I have with respect to your argument on to C4 is it explicitly encompasses previous administrative proceedings. And I thought you participated and raised the matter before the IRS Office of Appeals. That was done pre-assessment, yes. All right. So just, I realize the tax court didn't address the C4 argument. But of course, we can affirm on any ground. And it did seem to me that the C4A1 applied to your client. If it applies to liability determinations. But you did participate at a previous administrative hearing, so... That is correct. That's not disputed. But our point is... So why doesn't that just... Why doesn't that... Okay, you participated. That's what the situation addresses. It's really a... It's a two bite at the apple provision. We don't want you to have two bites at the apple. Because overall, what Congress was concerned about is having these procedural hearings, that these collection due process hearings turn into extensive merits challenges. And so that's what these provisions are aimed at. Not just opening up these collection due process hearings to merits challenges to taxpayer liability. And C4, and also C4A1, and C2A, both seem directed at that same point. And the hard part of your case for you to get over was that you had an opportunity and took advantage of the opportunity to litigate the merits of your deficiency. Your Honor... Not the procedures the government was using for the levy, but the merits of your liability before the IRS Office of Appeals. And I can't read in these statutes something that says, oh well, it was just an administrative hearing. And we all know that there are normally appeals to courts from administrative hearings and everything. And it just seems to me that Congress wanted to do something a little bit different here. Your Honor, my client is not getting two bites at the apple when it comes to going to court. In fact, if I'm raising it, I couldn't have gone, my client could not have gone from the prior administrative pre-assessment hearing, there was no right to go to court. None. Zero. And if the liability is so large that my client can't go to district court by paying the refund, by paying and suing for refund, the interpretation of C4 argued by the government keeps my client from ever being able to go to court. But how did the other Sterling plan participants get into court? Tax? Well, this is a 6707A, when you say the other participants, you're talking about the 6707A in the other circuits that I'm arguing? Brown, Tomasetti, those folks. That deals with income tax liability. We're not talking about an income tax liability in this case. We're talking about a penalty that was imposed as a result of my client not sending in a form with their return. So those Sterling plan participants that I just mentioned had a different tax assessed? Yes. It's an income tax, and this is not an income tax. This is merely a penalty. You're fighting about the income tax, but not in this proceeding. I'm sorry? Your client is fighting about the income tax, but not here. My client fought about the income tax. That fight is over. In the Our Country Homes Enterprises case that was decided in the Seventh Circuit. That was decided by the tax court. That has nothing to do with this case. This case has to do simply with a penalty. So my point is, going back, your Honor said this purpose of this statute was to limit. No. In 1998, Congress perceived that there were abuses by the IRS. Collection abuses. And they made a judgment that said, we think that the taxpayer should have an additional opportunity to litigate the merits. If you go look at the legislative history cited in the Lewis case, which is the presidential tax court decision relied on by the court below here, the court discusses the legislative history. And it was contemplated at one point in time, the taxpayer could raise the liability, any liability, and the Treasury Department came back and said, wait, we don't want to be able to, to, them to litigate a liability that's already been litigated. Okay? My client's never had an opportunity to litigate this. Mr. Taylor, let me go back to the question I asked because I'm a little bit confused here. So the first argument out of the box by the government is that this case is moot precisely because these other participants in this Sterling plan had an opportunity to litigate this issue, lost. You agreed to stipulate to that result, and therefore the case is moot. Now, setting that aside for the moment, you seem to be saying that that's an entirely different tax, has nothing at all to do with whether or not this issue, whether this plan should have been listed, was part of that litigation. Your Honor, let me answer, I'm going to answer you a little obliquely, because these other litigation has to do with income tax. I prefer that you answer directly. I understand, but I have to start, and I'll get to the direct answer, okay? This, again, this, the government comes in and says, oh, there's, there is, you know, it's moot because there's collateral estoppel. The issue in this case is the computation, first, the court below said we don't have the authority to decide the merits and collateral estoppel is a merits-based decision. Okay? So this court can't say collateral estoppel applies or doesn't apply because the tax court never addressed the question. They said we can't determine the liability, period. Second, in this situation, my client disputes the amount of the liability. Okay? The whole issue of whether it, what type of plan it is, isn't, the collateral estoppel doesn't affect the main argument we're making. Our position is they computed it incorrectly, the penalty incorrectly, because they referenced the penalty by looking to the hypothetical tax loss for years prior to our year, 2007. The government assessed a penalty of $61,000 in change against my client for failing to submit a form with a return, and they based that penalty not on the hypothetical tax loss for 2007, which was zero. Instead, they said we're going to back and look at the hypothetical tax loss in prior years. Those years, there was no requirement to send in the form because the transaction didn't become listed until 2007. This is your argument why you only owe $5,000. Correct. That's the merits. Okay? We didn't get a chance to raise that. Well, before the Office of Appeals, you didn't get a chance to raise that? Not, well, yes, but we couldn't go to court from that. And my point is, we don't get two bites at the apple here. We're not, we're only asking for one bite at the apple to go to court. And the government's position here leads to absurd results. Since C2B speaks in terms of underlying, says if the person did not receive statutory notice or did not otherwise have an opportunity, didn't you have the opportunity? Well, we actually did participate, and if you actually did participate, we say that's a judicial opportunity. But let me address why C2B... But I know you say that's a judicial opportunity, but the statute doesn't say that. It says an opportunity. Right. I agree. But there are reasons why, when you look at the statutory framework as a whole, it has to be a judicial opportunity and not an administrative opportunity. Well, I mean, at best, you get it to the level of ambiguity, and then Chevron takes over. We don't think Chevron applies. And even if it does, the regulation does not survive a rational basis. Here is why. Let me ask you this. Between the taxpayer, between the IRS Office of Appeals and the collection due process hearing, was there any adjustment or change in your tax liability or was it a fixed amount? Between the IRS Office of Appeals hearing and the collection due process hearing, it remained constant? The examination for division proposed a penalty. It was an administrative appeal. The administrative appeal sustained the full amount of the penalty. All right, but the... $61,000 in change. The amount of the tax liability remained constant, did it not? I'm sorry? The amount of the tax liability remained constant from the IRS Court of Appeals, Office of Appeals hearing until the point of the collection due process hearing. We're talking about the same amount? Yes, $61,000. Because it might be a different case if the amount had been adjusted for the first time in that interim period, but it wasn't. I would like to just briefly address why C2B, the government's regulation and interpretation, makes no sense. The government's regulation says that we look to whether or not a hearing was offered by the chance to go to the Office of Appeals. That's the standard, with an exception that has no rational basis. I'll get to that in rebuttal. But the basic rule says, let's look and see why we go to... If you have the opportunity to go to appeals, you lose the right to raise it in court. That's C2B. It's in the mere opportunity, not going there. But... May I ask you to take this up on rebuttal? Yes, Your Honor. Thank you. Thank you. Ms. Rubin, let's hear your side of it. May it please the Court, my name is Jennifer Rubin and I represent the commissioner in this case. And to start off, I'd like to take a step back and to say none of these issues, except the mootness point, are jurisdictional and none of them are merits. They're all preclusion. And looking first at 6330C, C2B is a CDP proceeding specific version of claim preclusion. Can you talk either, maybe put the microphone a little closer or talk a little louder? Thanks. C2B is a CDP proceeding specific version of claim preclusion. It says if you even have the opportunity to be heard, then you are precluded from raising liability in CDP. Even if you don't partake? Even if you don't partake. So it's a little broader than the judicial version of reis judicata, but that's specific to the CDP proceeding. C4 is... It sounds a little... Reading this statutory and regulatory regime sounds a bit arbitrary as to who gets the opportunity to participate or not. Is it the case that in every situation such as this, a taxpayer is going to have an opportunity to participate in an administrative hearing before the Office of Appeals? Actually, no. There are certain penalties that are not subject to pre-assessment protests or that sort of thing. There are also certain situations where somebody, say, has acknowledged that they owe taxes on their tax return but didn't pay it. Those would not be subject to pre-assessment. How is a taxpayer supposed to know? Are they given notice of their administrative appeal rights? Generally, you are. Certainly in this case, you are. There are situations where someone was not given, was not properly given notice, which the statute actually acknowledges. For instance, someone should have gotten a deficiency notice, didn't receive it. But you're not precluded if you didn't get notice. Right. If you did not receive your deficiency notice. If you didn't receive adequate notice because of capital B, underlying liability, said if the person did not, the person may also raise challenges to the amount of the tax liability if the person did not receive statutory notice of deficiency for such or did not have the opportunity. So either one, it's phrased in the disjunctive. That does make sense. So if a taxpayer didn't receive notice, he wouldn't be precluded, I would hope. That would make sense to me. I also think, especially in the reply brief, Ames makes an argument to say, well, you could have always done an audit reconsideration. You could have always done an offer in compromise. But each of those are multi-step phases. And if you don't request it and you don't request it properly, you won't be offered an appeals hearing. So there are numerous situations where somebody just does not have the opportunity for an appeals hearing, is not offered that opportunity, either properly or by accident. In this case, counsel for the appellant, who I think was very candid with the court, indicated that he not only had the opportunity but actually participated before the Office of Appeals. That's correct. And his view is that an administrative hearing of a tax without the opportunity for judicial review of the merits of the tax liability was not what Congress had in mind. That was just purely administrative relief, or not relief, but a purely administrative opportunity without a right of judicial appeal is just too truncated. What do you say with respect to that? I'd say there's two different answers depending on which provision you're looking at. C-4 clearly indicates that an administrative proceeding at which you meaningfully participated where you raised the issue and it was considered as here counts. And under the plan- C-2B doesn't have that, it doesn't have that same reference to a prior administrative hearing. So are we to conclude that the presence of the word administrative in C-4 and the absence of a reference to administrative in 2B is significant? No, I actually read that as expanding issue preclusion for CDP purposes beyond what the Commissioner versus Sonnen case does in judicial collateral estoppel. It's making clear that you get issue preclusion effect in the CDP proceeding from an administrative proceeding as well as from a judicial proceeding. In fact, I'd actually say that the inclusion of administrative proceedings in C-4 is some powerful evidence that C-2B's opportunity to be heard, opportunity to dispute liability should include administrative proceedings because if an administrative proceeding is good enough for C-4, why wouldn't it be good enough for C-2B? But turning again to C-4, I read- I would appreciate you to, at some point, get to the C-2B argument. Okay, if I could very briefly- But I just don't want your time to run out. Okay, if I could just very briefly on C-4 just say, number one, I think under the plain language, we're not asking for any deference to any interpretation, we're pointing to the plain language. Under C-2, it tells you what issues can be raised. That, and that includes liability, is included under those issues, C-2B. C-3 talks about issues considered in the determination. C-4 is issue preclusion. There's no reason why liability would be included in C-2 and C-3 and not be included in C-4. The taxpayer's reading of C-4 is inconsistent with the Schaeffer case and the Ruggiero case. It's inconsistent with the policy that you would want- On my good colleague's question about C-2B. Yes. It's possible, I suppose, that C-2B is informed significantly by the purposes set forth in C-2A. In other words, C-2A says, okay, in general, these are the issues. And you can raise any other relevant issue to the unpaid tax or proposed levy, including spousal defenses, challenges to the appropriateness of collection actions, offers of collection alternatives. So you get the idea that from C-2A, that what Congress intended here was what these things are called, which is a collection due process. Right. Hearing that if the government is arbitrarily putting a levy on your property or what have you, that you have a chance to contest procedural arbitrariness on the part of the government. And it gives you a taxpayer some actually fairly significant protections in this way. And that is they can post a bond or they can have a substitution of other assets on which the levy can be levied or imposed. Or you can repay an installment agreements or there can be a compromise. In other words, this collection due process hearing is not just a, you know, an empty formality. There's some real protections that the taxpayer has, but they just didn't want to turn something indicated to talk about collection methodology into merits litigation. That would really have a huge impact on the functioning of the tax system. It would have a big, it would be a big deal. It would be a big deal. And both in the sense of diverting the CDP process away from collections issues and in undermining the refund system that has been in place for decades and decades. And we simply don't believe that Congress would have done anything that major without making it a lot clearer than this statute would seem to be, which is something that the Lewis court made clear on 128 TC at 61. You know, the real point here is that it is a collections due process, as you say. And we read C2B as a stop gap. If you really got no opportunity at all to dispute liability, if somehow you just never got it either because of the type of case or because there was some mistake that occurred or something like that, yes, then you can raise it. But it is not supposed to be in every case. It's not supposed to be in most cases. It's a stop gap. And that's a reasonable reading. Again, we're into the land of Chevron. My opponent has said, well, this is jurisdictional reading of the judicial jurisdiction. This is incorrect. And also I think inconsistent with city of Arlington. This is a Chevron case. This is an ambiguous provision. It does not, as my opponent tries to argue, clearly state that only judicial opportunities count. No secure associates is completely unhelpful here. And the superfluity argument, as we've already discussed when I was responding to Judge Diaz's answers, really doesn't apply here because there are circumstances where someone does not get the opportunity to be heard on liability prior to the CDP process. Which means we're looking at the regulation. And it's not, is there a rational basis? Is it a reasonable reading of the statute? Not whether Ames thinks that this is the best policy, but is it a reasonable reason of the statute? And because the statute could be read as administrative or judicial opportunities to be heard, it's almost on his face. Facially, it is reasonable. Now, my opponent has made some arguments to say, oh, we think there's some inconsistencies with how there are exceptions. But none of his arguments actually really make sense in the end. He says, well, you don't include examinations, hearings or meetings. I'm skeptical of your mootness argument on this case because I'm not as, as far as collateral estoppel is concerned, I'm not as wild about privity collateral estoppel as I am with parties where we're actually the same. And I don't know enough about these other country cases to really know. I mean, you're not, you'd rather get a marriage reading of these statutes, wouldn't you? No, I think you don't have to decide that Our Country Home got it right to rule that a collateral estoppel applies here. Let me just tell you what my reasoning was and why I advocated including this and why we included this in our brief, was when I read the Our Country Home decision, my immediate thought was, why does it matter how 6330C is interpreted? If this goes back in remand, we're gonna argue collateral estoppel and I think we win because the listed transaction issue is resolved here. And we do believe that is the only issue that is alive in this case. I think there's an actually very accurate description of how things went down in these cases on page eight of my opponent's opening brief. They say, in the pre-assessment protest hearing, we raised a calculation argument and we think it's a great calculation argument and we think that if it were adopted, accepted, we win. And the thing is, is that during the CDP proceedings, that issue wasn't raised. And so, you know, you look at the brief, especially reply tenses, here's all these places we raised it. None of those places raises issue. The closest they come was in the post-judgment hearings where they talked about statute limitations arguments based on section 6501, which is the statute of limitations for assessment. Let me ask you something on the C-4. Why didn't the tax court address this case under C-4? Did you, was this raised? It was raised. It was raised in our supplement to our motion for summary judgment. And honestly, C-2B is often, in many cases, an easier one in liability cases to argue. And I kind of went back and forth on which was the stronger argument. I think they're both stronger arguments. That's why we wanted to include them. See, often in liability cases, I think there's a tendency to default to C-2B because you don't have to show that the issue was actually raised. You don't have to show that it was considered. You don't have to show that there was meaningful participation. As it happens in this case, it's pretty easy because it's a plain language analysis, which is why I put it first. And there's really no dispute. Are you arguing that both of them are plain language analysis? I would say that we acknowledge that C-2B is ambiguous and therefore we're going to the regulation. So C-4, however, we think is plain language. We think that it is clear. And in this particular case, there's just really no problem with the more stringent requirements of C-4 that there be meaningful participation. When were the treasury regulations adopted? Come again? When were the treasury regulations adopted? I'm not 100% sure on that. Like, are they more recent than two years? Oh, no, they're older than two years. They've been around for quite some time. Right, and there was time for comment. Yes, I believe there was. And were there comments? I'm really not sure about that, Your Honor. My suspicion is based on how in-depth these were. My suspicion is that there were, but I really can't confirm that. But they have not made a State Farm argument. I mean, I think that the regulation does make pretty clear what it's trying to do. It's trying to define what an opportunity to dispute, and it makes clear what it says it is, which is an appeals hearing accepting pre-deficiency notice deficiency cases, if you met with appeals before then, which is reasonable in terms of the language of C2B. It's also reasonable in terms of the importance of the deficiency notice in the deficiency proceedings under Internal Revenue Code, Section 62.13. Do you have anything further? I do not, but we urge this Court to affirm for all the grounds in our brief. Wait a minute, I want to ask my colleagues if they have anything further. Diane, did you have anything? Yeah. Okay, thanks. I'd like to now discuss why the government's regulation under C2B is completely arbitrary. Their argument is that we look to whether or not there's an appeals hearing, whether you could have gone to appeals. Doesn't matter whether you went. There's no requirement in the law. The IRS can offer an appeals hearing or not offer an appeals hearing, but it can go if it wants to and offer an appeals hearing to every single taxpayer. It could if it wanted to. Say, taxpayer, if you want to dispute this liability, you can go to appeals. And so by upholding the regulation, this Court would give the IRS unfettered discretion to decide when a taxpayer can go to court under C2B. Let me repeat, the regulation says, can you go to appeals? If so, with an exception that has no rational basis. But if you can go to appeals, you can't raise it. But the IRS can offer everybody an appeals hearing if they want to. There's nothing in the law that prohibits them from doing that. And so there's nothing in the law that prevents them from precluding every single taxpayer who has a disputed liability from ever litigating in a CDP case, and I don't think that's what Congress intended. Furthermore. Well, the fallback is to pay the tax and sue in district court, right? Well, that was there before, but the whole purpose of CDP was to change the system. Yes, it's there. And if a taxpayer can't, doesn't have the ability to pay, if it's a million dollars, two million dollars, CDP is the only place in the world where they can litigate. But also, if you step back and ignore the regulation for a minute, if you say, well, now we think that administrative opportunities preclude you from going, not whether you took advantage of them, but whether they exist. We point out pages 26 through 35, approximately of our opening brief, that administrative opportunities to challenge a disputed liability are ubiquitous. So you say that all the purposes of this statute was to change the whole system, right? Yes, Your Honor. But that begs the question of how did they want to change the whole system? And it seemed to me that the way in which they wanted to change the system was out of concern on the part of the, that the IRS was pursuing very high-handed and arbitrary collection proceedings. And that they, so yeah, they did want to change the system to put some brakes on how the IRS could impose a levy, that they had to consider other ways of collecting taxes. But they didn't want to change the system so thoroughly that they were going to be re-litigating the merits of tax liabilities in each one of these, in each one of these hearings, because you can just bog the proceedings down quite significantly by turning it into a re-litigation of tax liability when you've already had a shot at it. Your Honor, there's nothing in the legislative history, there's nothing in the text of the statute, and there's nothing in the context of the statutory scheme that supports the conclusion the court said that you're not intended. There actually is plenty because they all make references to previous, both C-3B, or whatever it is, C-2-3, and C-4, make references to previous opportunities. And wanted to make sure that you had one bite at the apple, but not two. And also, the general purpose of these hearings is set forth clearly in the statute to give the taxpayer alternative means of tax collection to propose to the IRS, and that the IRS has to consider these kind of things. They just can't go after a particular asset if there are other assets or installment payments or other ways that would be a little bit less, a little bit more genial to the taxpayer involved. And so, I think your comment was way, way too high a level of generality when you say you wanted to change the whole system. I think they wanted to modify it in certain very discreet ways. If you, again, if you go look at the legislative history that's discussed in Lewis, okay, the original language basically allowed taxpayers to challenge any liability. So it's clear that Congress was contemplating that. Then the Treasury Department said, wait, we don't want the taxpayers to dispute liabilities that have already been litigated. They didn't come back and say, we wanna narrow it to situations where it wasn't previously litigated. That was their reaction. And they said, we don't want taxpayers to litigate twice, not administratively appeal twice, to litigate twice. And the result in response to that letter was the language we have now, okay? There's nothing, so it's very clear that Congress was looking at completely changing the system. The question is, and because the Treasury said, we don't want the taxpayers to litigate twice, we take no issue with that. We're not trying to litigate twice. We're trying to litigate once, okay? Thank you, sir. Thank you. We appreciate it. We'll come down and greet counsel moving to our last.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Albert Diaz